IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE GONZALEZ, | ) | |
|     Plaintiff, | ) | C.A. No. 17-324 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| LT. MURIN, et al., | ) | |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

    **A.     Relevant Procedural History**

Plaintiff Jose Gonzalez, an inmate incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania, filed this *pro se* civil rights action on December 8, 2017, against the following staff members at SCI-Forest: Lt. Murin ("Murin"); Lt. Clouser ("Clouser"); C.O. Garland ("Garland"); Nurse McNeal ("McNeal"); and Lt. Dicky ("Dicky"). In his *pro se* complaint, Plaintiff alleges an Eighth Amendment cruel and unusual punishment claim against Defendants Murin, Clouser, and Garland, and an Eighth Amendment deliberate indifference to medical needs claim against all Defendants.

This case was initially assigned to United States District Judge Joy Flowers Conti, as presiding judge, and was referred to the undersigned, who was then a United States Magistrate Judge, for all pretrial proceedings. On September 14, 2018, the undersigned was sworn in as a United States District Judge, and this action was subsequently reassigned to the undersigned, as presiding judge, on September 18, 2018 [ECF No. 26].

1

Now pending before this Court is Defendants' motion to dismiss [ECF No. 10], in which they argue that Plaintiff has failed to adequately allege their personal involvement in the alleged constitutional violations, and has otherwise failed to state a claim upon which relief may be granted. Plaintiff has filed a brief in opposition to Defendants' motion [ECF No. 24]. This matter is now ripe for consideration.

### **B.** **Plaintiff's Allegations**

Plaintiff alleges that on March 16, 2017, after being escorted in handcuffs to SCI-Forest's Restricted Housing Unit, Defendants Murin, Clouser, and Garland unsuccessfully attempted to uncuff his left wrist. (ECF No. 3, Complaint, at Section IV.C). "Nonetheless, they tried several things to get the cuffs released, twisting [his] left wrist, using bolt cutters, [and] stepping on [his] hand with their feet," before "the bolt cutters finally worked." (Id.). By then, Plaintiff alleges that his left wrist and hand "felt broke, badly bruised and very painful." (Id.). Plaintiff asked to go to the hospital or to see a doctor, but was denied. Three hours later[1], medical looked at his left hand and told him that nothing was wrong. (Id.). Plaintiff was seen three different times by Defendant McNeal, who told him that nothing was wrong with his left hand. On his fourth visit to the medical department, Plaintiff was seen by a physician assistant who ordered that Plaintiff be taken to an outside hospital, "where they operated on [his] left hand because [he] had a [torn tendon]." (Id.).

---

[1] This alleged timing conflicts with the allegations of Plaintiff's grievance regarding this episode, in which Plaintiff states that "the nurse finally came after about 20 mins. of me complaining of my hand…" (ECF No. 11-1, at p. 2).

2

## II. DISCUSSION

### A. Personal Involvement

It is well-settled that liability under § 1983 requires a defendant's "personal involvement" in the deprivation of a constitutional right. See Gould v. Wetzel, 2013 WL 5697866, at *2 (3d Cir. Oct. 21, 2013), citing Argueta v. U.S. Immigration and Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011). This means that the defendant must have played an "affirmative part" in the complained-of misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) ("In a § 1983 suit … [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Oliver v. Beard, 358 Fed. Appx. 297, 300 (3d Cir. 2009); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

Here, Defendants argue that "Plaintiff does not specifically allege how any of *these* defendants were actually involved in, had actual knowledge of or gave acquiescence to the act alleged in the Complaint, *i.e.*, removal of defective handcuffs with bolt cutters." (ECF No. 11, Defendants' Brief, at pp. 4-5) (emphasis in original). This argument carries little weight as it pertains to Defendants Murin, Clouser and Garland, as Plaintiff specifically alleges that all three were involved in the attempt to remove the defective handcuffs. Although the complaint does not make clear the precise actions taken by each, there is certainly enough to indicate that each "played an 'affirmative part' in the complained-of misconduct." Iqbal, 556 U.S. at 677.

To the extent Defendants' argument applies to Defendant Dicky, however, it is apparent that Plaintiff has failed to set forth any factual basis to establish Defendant Dicky's personal involvement in any alleged unconstitutional conduct. In fact, aside from identifying Defendant

Dicky in the caption, the complaint is utterly devoid of any allegations or claims against Defendant Dicky upon which relief may be granted. As a result, Defendant Dicky will be dismissed from this case.

**B.     Eighth Amendment Cruel and Unusual Punishment**

Defendants assert that "Plaintiff is alleging nothing more than a claim of negligence against [them] for the alleged lack of due care in removal of defective handcuffs with a bolt cutter." (ECF No. 11, Defendants' Brief, at p. 8). Moreover, Defendants argue that the alleged conduct challenged by Plaintiff did not rise to the level of cruel and unusual punishment under the Eighth Amendment. (Id., citing, *inter alia*, Wilson v. Seiter, 501 U.S. 294, 298-99 (1991) ('To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's safety… It is *obduracy and wantonness, not inadvertence or error in good faith*, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause…") (emphasis added; citations omitted)). The Court disagrees on both counts.

Plaintiff's allegations make clear that he is not simply alleging ordinary lack of due care, inadvertence, or error in good faith. Instead, Plaintiff alleges that Defendants' twisted his wrist and stepped on his hand while forcibly attempting to remove his handcuffs with bolt cutters. In fact, Plaintiff's allegations are similar to those upheld by the Third Circuit Court in Robinson v. Danberg, 673 Fed.Appx. 205 (3d Cir. 2016). In Robinson, the plaintiff, a pretrial detainee, alleged that the defendant corrections officer used excessive force when he "allegedly uncuffed [plaintiff] by 'put[ting] his foot on the door and ... yank[ing] the left cuff off[,] ... split[ting] the

4

top of [plaintiff's] hand.'" Id. at 209. The Third Circuit Court reversed the district court's grant of summary judgment in favor of the corrections officer, finding, *inter alia*, that "a reasonable factfinder could conclude [the corrections officer's] use of force was excessive because [the plaintiff], according to his own account, was securely locked in his cell and was offering no resistance when [the officer] removed his handcuffs." Id. at 210.[2]

Thus, the Court finds that Plaintiff has sufficiently stated an Eighth Amendment claim against Defendants Murin, Clouser, and Garland, at the pleading stage, and Defendants' motion to dismiss said claim will be denied, accordingly.

### C.    **Eighth Amendment Deliberate Indifference to Medical Needs**

Although not entirely clear, it appears Plaintiff is claiming that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. In particular, Plaintiff alleges that Defendants Murin, Clouser and Garland denied his request to be seen by a doctor after the handcuff incident, and that Defendant McNeal told him there was nothing wrong with his left hand on three different occasions.

---

2
Significantly, unlike the plaintiff in Robinson, who only suffered minor or minimal injuries, Plaintiff alleges that Defendants' actions caused him to suffer a torn tendon in his left hand that required surgery. Moreover, in his grievance regarding the incident at issue, Plaintiff states that Defendants continued to apply force to remove the handcuffs despite his complaints that they were hurting him. [ECF No. 11-1]. Courts have found these elements – significant injury and repeated complaints of pain – to be particularly relevant in determining whether an excessive force claim may be maintained in the context of handcuffing cases. See, e.g., Kopec v. Tate, 361 F.3d 772, 777 (3d Cir.2004) (triable issue found where arrestee repeatedly requested to have handcuffs loosened and suffered permanent nerve damage to wrist); Sow v. Fortville Police Dept., 636 F.3d 293, 304 (7th Cir.2011) (affirming summary judgment where the plaintiff complained only once about his cuffs being too tight but never elaborated on his complaint); Tibbs v. City of Chicago, 469 F.3d 661, 666 (7th Cir.2006) (arresting officer entitled to summary judgment when arrestee complained that handcuffs too tight only once, experienced redness on wrists for less than two days, and did not receive medical care); Alexander v. City of Los Angeles, 64 F.3d 1315, 1322–23 (9th Cir.1995) (triable issue found where defendant officers tightly handcuffed dialysis patient and disregarded his repeated requests to loosen handcuffs).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need[3] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d

---

[3] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County

Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

Here, the allegations of Plaintiff's complaint indicate that he was seen by medical personnel within three hours after the handcuff incident, despite Plaintiff's allegation that Defendants Murin, Clouser, and Garland denied his request to see a doctor. In fact, as noted earlier, Plaintiff's grievance regarding the incident states that he was seen by a nurse "after about 20 mins." (ECF No. 11-1, at p. 2). It is well-settled that non-medical prison officials are usually justified in believing a prisoner is receiving appropriate treatment if the prisoner is under the care of medical personnel. Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical [prison official] … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. Thus, to the extent Plaintiff claims that Defendants Murin, Clouser, and Garland were deliberately indifferent to his medical needs, such claim is without merit and will be dismissed.

As for Defendant McNeal, Plaintiff alleges that he was seen by said Defendant on three different occasions, but was told nothing was wrong with his left hand, Nonetheless, Plaintiff's grievance of record indicates that Defendant McNeal applied antibiotic crème and a bandage to a cut on his left hand, and provided pain medication a few days later. (ECF No. 11-1, at p. 2). Although Defendant McNeal apparently failed to diagnose the full extent of Plaintiff's injury, such failure, if

---

Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

proved true, would amount to no more than medical negligence, which is not actionable as an Eighth Amendment claim. Moreover, it is apparent that Defendant McNeal at least provided some level of medical care for Plaintiff's injuries. As a result, Plaintiff's deliberate indifference claim against Defendant McNeal will be dismissed.

An appropriate Order follows.